## State National Bank v. Board of Councilmen of the City of Frankfort.

(Decided February 27, 1925.)

### Appeal from Franklin Circuit Court.

1. Statutes—Legislative Act Subject to Referendum Does Not Become Effective Until After Time Allowed for Filing Referendum Petition.—Under referendum clause of Constitution, section 171, as amended in 1915, a legislative act subject to referendum does not become effective until after time allowed within which to file referendum petition, if none be filed, but, if one is filed, it becomes effective when approved by people.
2. Statutes—Referendum Clause of Constitution Controls Section Relating to Effective Date of Legislative Enactments so far as Conflict Exists.—Constitution, section 55, providing effective date of legislative enactments so far as conflicting with referendum clause, section 171 must be controlled by latter.

JOHN D. CARROLL, JOHN S. CARROLL, T. L. EDELEN, T. N. LINDSEY and LESLIE W. MORRIS for appellant.

JAMES H. POLSGROVE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Whether the appellant is subject to a sixty cent tax rate or a $2.35 tax rate by appellee depends on whether or not chapter 117 of the Acts of 1924 took effect on June 18th or July 18th of that year, and this question in turn depends on the interpretation to be put on the referendum clause of section 171 of the state Constitution as amended in 1915. So far as pertinent that section reads as follows:

"Any law passed or enacted by the General Assembly pursuant to the provisions of or under this

amendment or amended section of the Constitution, classifying property and providing a lower rate of taxation on personal property, tangible or intangible, than upon real estate, shall be subject to the referendum power of the people, which is hereby declared to exist to apply only to this section, or amended section. The referendum may be demanded by the people against one or more items, sections or parts of any act enacted pursuant to or under the power granted by this amendment, or amended section. The referendum petition shall be filed with the secretary of state not more than four months after the final adjournment of the legislative assembly which passed the bill on which the referendum is demanded . . . All elections on measures referred to the people under this act shall be at the regular general election, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become a law when approved by the majority of the votes cast thereon, and not otherwise.''

This section further provides that a referendum to the people

''May be ordered either by the petition signed by 5 per cent of the legal voters, or by the legislative assembly, at the time said acts or bills are enacted. The General Assembly, enacting the bill, shall provide a way by which the act shall be submitted to the people. The filing of a referendum petition against one or more items, sections or parts of an act shall not delay the remainder of that act from becoming operative.''

For appellee it is argued that no act which may be referred to the people pursuant to section 171 of the Constitution goes into effect at least prior to the expiration of the time within which a referendum petition may be filed, i. e., four months after the final adjournment of the legislature. The appellant contends that in the absence of the ordering of a referendum by the legislature or of the filing of a referendum petition by the people, the acts of the legislature which are subject to a referendum, go into effect at the same time as do other acts of the legislature, subject to their suspension on the

filing of a referendum petition within the time allowed and possible final rejection when voted on by the people. It will be observed that if the appellee's contention be correct, the legislature will be without power to attach an "emergency clause" to an act which is subject to a referendum, and if the appellant's contention be correct, a law may be a law from the time of its passage, if it carry an emergency clause, up to the last day for the filing of a referendum petition, after which it will no longer be the law unless and until finally approved by the people at an election provided for that purpose.

After careful consideration, we have come to the conclusion that on principle and authority the better view is that the acts of the legislature subject to a referendum do not become effective until after the time allowed within which to file a referendum petition. This was the view of the lower court.

The purpose of the referendum amendment to our Constitution was to allow the people to pass directly upon all the acts of their legislature which come within its purview. The period of time fixed within which the people should have the right to file a referendum petition was undoubtedly so provided in order that the people might, in the meantime, inform themselves concerning what their representatives had done; that they might have full opportunity to discuss the same, to make up their minds as to what they wished to do, and, in the event they wished to test the sentiment of the state, to get up the necessary petition to order a referendum. Pending this time, it was not the purpose of the referendum amendment that acts passed but subject to its power should become laws or that the legislature should have the right to put into effect acts which the people might reject. The referendum amendment never contemplated or meant that a legislative act might be a law for as much as six months, which, if appellant be correct, it might be if passed in January with an emergency clause, since the four months following the adjournment of the legislature do not expire until in July, or even for one month or even one day, and then, on the filing of a referendum petition, stand suspended until an election and then, if rejected, be held "no law *ab initio*."

"That which purports to be a law is a law or it is not a law according as the proof of the fact may be and not according to the shifting circumstances of

the parties. It would be an intolerable state of affairs if a document purporting to be an act of the legislature could thus be a law in one case and for one party and not a law in another case and for another party; a law today and not a law tomorrow: a law in one place and not a law in another in the same state." Town of South Ottawa v. Perkins, 94 U. S. 260; Wilkes County v. Coler, 180 U. S. 506.

Further, the language of the amendment itself when it says that "any measure referred to the people shall take effect and become a law when approved by a majority of the votes cast thereon and not otherwise" leads to the same conclusion. If appellant's contention be correct, then acts subject to a referendum have the force of law until suspended by the filing of a referendum petition. But the amendment provides that such acts take effect and become law only on the contingency of their approval by the people. If such acts take effect before a petition is filed, how can they be made to take effect again on a different contingency or on a different condition? How can a measure become a law on the contingency of its approval by the people and *"not otherwise,"* if it was already a law before the voting happened? If the referendum amendment had intended such acts to become law on their passage, it would have provided for their suspension on the filing of the referendum petition. But the referendum amendment nowhere provides a suspension in terms or by any fair implication.

Again, if acts subject to a referendum may go into effect as laws prior to the filing of a referendum petition, just what meaning must be given to that part of the referendum amendment which reads: "The filing of a referendum petition against one or more items, sections or parts of an act, shall not *delay* the remainder of that act from becoming operative?" How can that which has "arrived" be "delayed?" If the act was already law, would not this clause read "suspend" or "repeal" or "affect" instead of "delay?"

But, it is argued, if these views be correct, then where does one find express constitutional provision for the time when acts subject to a referendum take effect? Section 55 of the Constitution reads:

"No act, except general appropriation bills, shall become a law until ninety days after the ad-

journment of the session at which it was passed, except in cases of emergency, when, by the concurrence of a majority of the members elected to each house of the general assembly, by a yea and nay vote, entered upon their journals, an act may become a law when approved by the governor; but the reasons for the emergency that justifies this action must be set out at length in the journal of each house."

This section and section 171 as amended must be read together. The exceptions provided for by section 171 must be read into section 55, and to the extent they conflict, the amendment of section 171 will constitute a limitation upon section 55. The fair interpretation from the two sections as thus read together is clearly that acts, subject to a referendum, become laws on the expiration of the time allowed for the filing of a referendum petition without such being done.

Turning to the authorities, we find these views supported by almost all the courts which have been called upon to pass on the question. In the case of Re Interrogatories by the Governor, 66 Colo. 319, 181 Pac. 197, 7 A. L. R. 526, we find that the Constitution of Colorado, article 5, section 19, provided that no act of the legislature should take effect until ninety days after its passage except such acts as were declared emergency acts. Thereafter article 5, section 1, of that Constitution was amended by the adoption of the initiative and referendum clause common to the western states. By this amendment it was provided:

"The second power hereby reserved is the referendum, and it may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety, and appropriations for the support and maintenance of the department of state and state institutions, against any act, section or part of any act of the general assembly, either by a petition signed by 5 per cent of the legal voters or by the general assembly. Referendum petitions shall be addressed to and filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly that passed the bill on which the referendum is demanded. The filing of a referendum petition against any item, section or part of any act, shall

not delay the remainder of the act from becoming operative. . . . All elections on measures referred to the people of the state shall be held at the biennial regular general election, and all such measures shall become the law or a part of the Constitution when approved by a majority of the votes cast thereon, and not otherwise.''

It will be observed how strikingly similar to the referendum part of section 171 of our Constitution is this referendum provision in the Colorado Constitution, and it will also be observed that the ninety days within which a referendum petition may be filed under the Constitution of Colorado may extend beyond the ninety days allowed for effective date of the ordinary acts of the legislature, since the former ninety days date from the adjournment of the legislature and the latter ninety days from the passage of the act. The question before the Colorado court was when does an act of the general assembly containing an ''emergency clause'' but lacking a ''safety clause'' take effect and become operative? The court after quoting the referendum clause said:

''(This language) is stated in such clear and definite language so plainly expressing the purpose and intent of the act that construction is not possible. It simply states that no act which is subject to the referendum shall take effect until approved by a majority of the votes thereon, and that ends the matter. This provision cannot by any course of logical reasoning be held to mean that such an act can be put into effect through the emergency clause prior to the expiration of the time within which it may be referred. No other conclusion is possible, without doing violence to the meaning of the language which gives expression to the clear purpose and object of the people in adopting this amendment. The conclusion is irresistible that no act, not of the excepted class, can have the force of law, or can become operative until after ninety days from the adjournment of the assembly at which passed, and if referred, then not until approved by a majority of the people by vote at a general election.''

In the case of State v. Moore, 103 Ark. 48, 145 S. W. 199, the referendum clause of the Constitution was practically identical with the referendum clause of the Colo-

rado Constitution, above quoted. It appears that under the Arkansas Constitution prior to the adoption of the referendum clause, acts of the general assembly went into effect on their passage and approval by the Governor with certain exceptions as to veto and the adjournment of the legislature not here important. The supreme court of Arkansas held that the Constitution must be construed as a whole and that any act subject to the referendum power of the people could not go into effect until the time allowed for the filing of a referendum petition had expired. The court said:

"By this (referendum) amendment they (the people) have reserved to themselves power to pass directly upon all acts of their legislature, except laws necessary for the immediate preservation of the public peace, health, or safety, and approve or reject the same. . . . Under this initiative and referendum amendment, only 'laws necessary for the immediate preservation of the public peace, health or safety' are excepted from its provisions, and no power is reserved by the people to pass directly upon such laws. All other laws are subject to its operation; and, ninety days being given by its terms from the final adjournment of the session of the legislature which passed them in which to demand or order the referendum thereon, they cannot take effect or go into operation till the expiration of ninety days after such adjournment, nor thereafter until approved by the people, if the referendum is ordered or invoked. It was not intended that an act passed by the legislature should take effect conditionally and subject to the referendum, and continue in force from its passage, if the referendum was not ordered, or that an act once in force should be suspended by the referendum till its approval by the people."

The case of Sears v. Multnomah County, 49 Ore. 42, 88 Pac. 522, is in accord with the views of the Arkansas court. The Oregon court said:

"The clause in the (referendum) amendment which reads, 'Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise,' clearly means that a law upon which the referendum is invoked cannot take effect prior

to its approval by the vote; and consequently no act that is subject to the referendum can be made to go into operation for ninety days after the adjournment of the session or its approval by vote."

The Oregon Constitution prior to the referendum amendment was identical with the provisions of our Constitution covering when acts of the legislature go into effect and the necessary result of the Oregon decision is that no act other than one of the class exempted from a referendum can go into effect, even though it carries an "emergency clause," prior to the expiration of the time within which a referendum petition may be filed. In this Oregon case, the court pointed out that article 4, section 28, of the Oregon Constitution, which corresponds to section 55 of our Constitution, must be read in connection with the referendum amendment, and that the exception in the amendment must be read into section 28 of article 4, for otherwise the reservation in the amendment of the reservation of power to approve or reject at the polls any act of the legislative assembly would be rendered futile. To the same effect as these cited cases, is State, ex rel. Richards v. Whisman, 36 S. D. 260, 154 N. W. 707, in effect disapproving State, ex rel. Lavin v. Bacon, 14 S. D. 394, 85 N. W. 605; Cf. State v. Carter, 257 Mo. 52, 165 S. W. 773.

The cases of State, ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710, and State, ex. rel. Collins v. Jackson, 119 Miss. 727, 81 So. 1, are not in accord with the foregoing cases or our views. In the North Dakota case the opinion was by a divided court of three to two, all of the judges filing an opinion. The reasoning of the dissenting judges appeals to us more than that of the majority judges. In the Mississippi case the opinion was also by a divided court. The majority opinion laid emphasis on two parts of the Mississippi referendum law which it claimed differentiated the same from the referendum laws of Arkansas, Oregon and the other states we have noted. Those two parts are "All measures referred to a vote of the people by referendum petitions *shall remain in abeyance* until such vote is taken;" and "if a referendum petition is filed against such emergency measure, *such measure shall be law* until it is voted upon by the people, and if it is then rejected by a majority of the voters voting thereon, it shall be thereby repealed."

Neither of these qualifying clauses appears in our referendum amendment. Aside from this distinction, which we think may warrant the Mississippi court in arriving at the conclusion it did, we think the dissenting opinion contains the better reasoning. In part it reads:

"This paragraph provides again that any measure submitted to the people as herein provided shall take effect and become law when approved by a majority of the votes cast thereon, and not otherwise. If the act takes effect before the petition is filed, how could it be made to take effect again on a different contingency, or on a different condition? The measure passed by the legislature against which an initiative petition is filed by the very terms of the Constitution shall take effect and become law when approved by a majority of votes cast thereon, and not otherwise. How can a measure become a law on this contingency if it was already a law before the voting happened? Under the majority opinion the act has the force of law all the while; yet under this clause it is provided that it shall take effect and become a law on this contingency, and not otherwise. If the framers of the amendment had intended the act to become a law on its passage, it would merely have provided for the suspension of the law on the filing of the petition, but the constitutional amendment nowhere provides a suspension in terms, or, as I see it, by any fair implication. It is undertaking to keep an act of the legislature in abeyance until a vote is taken thereon, and under the terms of the Constitution it does not become a law until so approved by the people. It is true that section 75 of the Constitution, enacted long prior to the initiative and referendum amendment, provided that an act of the legislature of a general character would not become effective until sixty days after the approval of the act, unless it had a clause fixing an earlier date. The spirit and purpose of this section of the Constitution was to allow a period to elapse after the passage of a law before it became effective, except in case of an emergency, to the end that the people whose rights and liberties might be affected might acquire knowledge of the terms of the law. As I understand the rule, an amendment to a Constitution is not to be pared away by con-

struction to prevent it modifying some other section or clause of the Constitution. The amendment must be construed so as to give it full force and effect, and if, so construed, it conflicts with another provision theretofore in the Constitution, the effect would be to repeal or modify such section of the Constitution.''

For the reasons stated and under the authorities cited, we conclude that all acts subject to a referendum, as now provided by section 171 of the Constitution, become law only at the expiration of the period allowed for the filing of a referendum petition if none be filed within that time, and if one be so filed, only when approved by the people at the election called for by that section. The judgment of the lower court being in accord with these views, it is affirmed.

Judgment affirmed.

Whole court sitting.